611 So.2d 153 (1992)
Outher COLE, et al., Plaintiff-Appellant,
v.
CELOTEX CORPORATION, et al., Defendant-Appellee.
No. 91-1221.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Writ Granted March 26, 1993.
*154 Baggett, McCall & Burgess by William B. Baggett, William B. Baggett, Jr., Rebecca S. Young, Lake Charles, for plaintiffs-appellants.
Guillory & McCall by William T. McCall, Robert E. Guillory, Jr., Lake Charles, for defendantIns. Co. of North America appellee.
Laborde & Newuner by James L. Pate, Ben L. Mayeaux, Lafayette, for defendant  M.H. Detrick Co.
Galloway, Johnson, Tompkins & Burr by J. Michael Johnson, Thomas J. Smith, New Orleans, for defendantCombustion Engineering, Inc.
Jones, Tete, Nolen, Hanchey, Swift & Spears, by Kenneth R. Spears, Lake Charles, for defendantOxy Oil & Gas USA, Inc.
Forman, Perry, Watkins & Krutz, by Richard L. Forman, Jackson, MS, for defendant Keene Corp.
Weeler, Wheelus & Green by David L. Tolin, Beaumont, TX, Edwin A. Ellinhausen, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for defendantPittsburgh Corning Corp. Fibreboard Corp.
Phelps, Dunbar, Marks, Claverie & Sims by Richard N. Dicharry, Stephen P. Hall, New Orleans, for defendantsErnest Alfred Moore As Representative Of Certain Underwriters at Lloyd's London & Certain Market London Ins. Companies.
Montgomery, Barnett, Brown, Read, Hammond & Mintz by Lawrence G. Pugh, III, New Orleans, for defendantThe Celotex Corp.
Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot by Michael T. Cali, New Orleans, for defendantOwens-Corning Fiberglas Corp.
Deutsch, Kerrigan & Stiles by Janet L. MacDonell, Robert E. Kerrigan, Jr., A. Wendel Stout, New Orleans, for defendants GAF Corp., Keene Corp., Nat. Gypsum Co., Quigley Co., Inc. U.S. Gypsum Co.
Maria I. O'Byrne Stephenson, Maria I. Patino Caro, Lisa C. Matthews, New Orleans, for defendantRock Wool Mfg. Co.
Adams and Johnston by D. Russell Holwadel, Jesse R. Adams, Jr., Robert M. Johnston, Thomas S. Morse, New Orleans, for defendantThe Manville Corp. Asbestos Disease Compensation Fund ("The Manville Trust").
Plauche, Smith & Nieset by Christopher P. Ieyoub, Lake Charles, for defendant W.R. Grace & Co.
Before LABORDE and THIBODEAUX, JJ., and CULPEPPER[*], J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
The issue in this delictual action is when the one-year prescription began to run. Plaintiff, Wilburn Robertson, filed suit on October 22, 1986, alleging he developed asbestosis resulting from exposure to asbestos dust during his employment with Cities Service Company. Two defendants, Owens-Illinois, Inc. and Pittsburgh Corning *155 Corporation, manufacturers of asbestos, filed exceptions of prescription. The trial court sustained the exceptions and dismissed plaintiff's suit. Plaintiff appeals.

FACTS
Plaintiff began working with Cities Service in 1950 as a carpenter. He was promoted in 1974 to maintenance foreman, a position from which he retired in 1985. Plaintiff received periodic physical exams during his employment with Cities Service, and in 1979 was advised that his chest X-rays were abnormal, and that he had a "condition in his lungs" which was aggravated by working around asbestos. As a result, plaintiff was placed in the "Asbestos Survey Program," and was examined once a year.
In 1983, in an examination conducted by Dr. Bonnie Camp under the "Asbestos Survey Program," the plaintiff's chest X-rays were again found to be abnormal. He was informed of this and given a work restriction requiring him to stay away from asbestos, even while wearing a respirator. Plaintiff was then referred to Dr. Jana Kaimal for further evaluation. Dr. Kaimal concluded plaintiff had evidence of asbestos-related lung disease. Dr. Camp then consulted with plaintiff on August 11, 1983 and informed him of Dr. Kaimal's findings and conclusion.
Plaintiff was again examined in May of 1984, and was again restricted from any contact with asbestos in the plant. A chest X-ray report confirmed the abnormalities previously noted by Dr. Kaimal. On the examination form, Dr. Camp required plaintiff to have no exposure to asbestos even with a respirator. Plaintiff signed this form.
In December of 1984, as plaintiff was nearing retirement, he requested to be kept on the "Asbestos Survey Program", and this request was granted. Plaintiff also specifically requested an extra copy of Dr. Kaimal's report of July 19, 1983, which concluded that plaintiff had an asbestos-related lung disease. Plaintiff received this report, as documented by his signature on the "Signature Form for Documentation of Release of Records."
On May 1, 1985, after plaintiff's retirement, he was examined and again notified his X-rays were suggestive of asbestosis. Despite this, plaintiff maintains the first time he thought he had asbestosis was in December of 1986, when Dr. Jack Van Campen told him he did.
Plaintiff filed suit in federal court on October 22, 1986. On December 22, 1987, plaintiff filed a complaint in state district court. In 1989, plaintiff's federal action was dismissed, without prejudice, as of non-suit.

ACTION OF THE TRIAL COURT
The defendants/appellees filed exceptions of prescription in the district court, and the matter was submitted on briefs, depositions and documentary evidence. On January 10, 1989, the trial court rendered written reasons sustaining the exceptions of prescription. Judgment was signed on November 28, 1989.
On appeal, plaintiff asserts, as his lone assignment of error, that the trial court erred in sustaining the exceptions of prescription. In his brief, plaintiff asserts a number of theories as to why prescription was either interrupted or suspended. We will address each theory in turn.

LAW OF LIBERATIVE PRESCRIPTION
A one-year liberative prescription applies to all delictual actions, LSA-C.C. art. 3492. This matter is a delictual action, and thus would prescribe one year from the day injury was sustained.
Generally, in a typical traumatic injury tort situation, there is little difficulty in determining the moment at which prescription begins to run. However, in situations where the injuries sustained do not immediately manifest themselves, it is often difficult to pinpoint the precise moment at which prescription begins. In these situations, prescription commences when a plaintiff has actual or constructive knowledge of facts indicating to a reasonable person that he is the victim of a tort. *156 Phillips v. Hamilton Medical Group, 507 So.2d 277 (La.App. 3 Cir.1987), writ den., 512 So.2d 458 (La.1987), cert. den., 484 U.S. 1013, 108 S.Ct. 717, 98 L.Ed.2d 666 (1988).
Plaintiff argues that the trial judge, in his written reasons, erred in using the standard from Cartwright v. Chrysler Corporation, 232 So.2d 285 (La.1970). The trial judge stated that "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." Cartwright contains similar language. Plaintiff points out that in Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), the court stated:
The language in Cartwright, quoted in footnote 1, is an incomplete definition of the kind of notice that will start the running of prescription. Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
The trial court did not cite Cartwright. It cited Jordan, supra, Phillips, supra, and other similar cases. It is apparent from reading the trial court's written reasons as a whole that it did not rely entirely on the Cartwright language, as to knowledge "of every thing to which inquiring may lead." The ultimate test, as stated in Jordan, is "the reasonableness of plaintiff's action or inaction." The trial judge concluded by applying the Jordan test.
Moreover, our independent study of the record convinces us that, under the reasonableness test in Jordan, plaintiff had constructive notice in 1983 or 1984.

CONTRA NON VALENTUM
As a defense against the exception of prescription, the plaintiff invokes the principle of "contra non valentum," which when applied prevents the running of liberative prescription. See Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La. 1979).
Plaintiff argues the trial court should have applied contra non valentum to excuse his inaction because there was no definite diagnosis of asbestosis, but only that asbestos related lung disease was one of several possibilities. This argument is without merit. Dr. Kaimal's report of July 19, 1983 concluded plaintiff had evidence of asbestos-related lung disease. Plaintiff was informed of Dr. Kaimal's findings by Dr. Camp. On December 28, 1984, plaintiff asked for and received a copy of Dr. Kaimal's July 19 report, as evidenced by plaintiff's signature on a "Signature Form for Documentation of Release of Records."
Even if other possible causes were mentioned, as plaintiff claims, the trial court specifically noted that plaintiff's own testimony eliminated any cause other than asbestos. In his deposition, plaintiff denied he ever had pleurisy or pneumonia, any injury to his chest, or lung disease other than asbestosis. As the trial court stated, when these possible explanations for the abnormal chest X-rays are eliminated, it is clear that plaintiff had constructive knowledge in 1983, or at the latest 1984, that his problems were caused by breathing asbestos dust on the job. Plaintiff's inaction, in failing to bring suit within one year of acquiring constructive knowledge, was unreasonable under the circumstances.
Plaintiff also asserts prescription was interrupted under contra non valentum because of the alleged fraudulent concealment on the part of the defendants, which prevented plaintiff from learning timely of the true nature of his disease. Plaintiff relies upon the case of R.J. Reynolds Tobacco Company v. Hudson, 314 F.2d 776 (5th Cir.1963), where a summary judgment in favor of the defendant was reversed because there were material questions of fact as to R.J. Reynold's misconduct and *157 the plaintiff's reliance on the alleged mis-representations. This case is inapplicable to the one at hand, because the court had before it a summary judgment proceeding which determined only that a dispute of fact existed upon the record and affidavits, while here the parties had an opportunity to present evidence before the court relating to prescription.
There was to be a hearing on the exception, but plaintiff requested the matter be submitted on the record and it was. Plaintiff failed to put any evidence before the trial court to support his contention that there was fraudulent concealment on the part of defendants. Likewise, we find nothing in plaintiff's brief before this court or in the record to support this contention. Accordingly, we find no merit in the argument that defendant's misrepresentations lulled the plaintiff into inaction.

THE SECOND INJURY RULE
As an alternative contention, plaintiff asserts that any diagnosis of asbestos-related pleural disease, in 1983 and 1984, does not commence the running of prescription for plaintiff's cause of action for pulmonary asbestosis, which plaintiff claims was not diagnosed until December 1986. If plaintiff's contention were true, it would require a separate cause of action for each and every ailment associated with asbestos, and each such cause of action would have its own separate prescriptive period.
Plaintiff quotes at length from Sheppard v. A.C. & S., Co., 498 A.2d 1126 (Del.1985). There the plaintiff first began experiencing asbestos-related symptoms in the early 1970s. X-ray reports indicated plaintiff was suffering from bilateral pleural thickening. However, the report stated there was no manifestation of active pulmonary disease. Further X-rays confirmed this pleural thickening as late as September 1981. In May 1982, plaintiff was examined by an occupational disease specialist who concluded plaintiff had pulmonary asbestosis, as well as asbestos-related pleural disease. Plaintiff's suit was filed several months later. The Sheppard court overruled defendant's exception of prescription, holding that separate periods of prescription commenced for the pleural disease and for the pulmonary disease, and thus prescription for the pulmonary asbestosis did not begin until May of 1982.
We express no opinion as to the Sheppard ruling. The facts in the case before us are distinguishable from Sheppard. Plaintiff was first told in 1979 his chest X-rays were abnormal and he had a "condition in his lungs." He was advised there were a number of things this could be, asbestosis among them, but no definitive diagnosis was given. Plaintiff was tested every year, and restrictions were placed on plaintiff requiring him to stay away from any contact with asbestos. In 1983, Dr. Kaimal examined plaintiff and specifically concluded that plaintiff had evidence of asbestos-related lung disease. The earliest plaintiff could be charged with knowledge that asbestos was responsible for his physical condition was August 11, 1983, when Dr. Camp told plaintiff of Dr. Kaimal's findings and conclusion. If Dr. Camp did not inform plaintiff of Dr. Kaimal's findings, as plaintiff claims, then plaintiff is not chargeable with knowledge until December 28, 1984, when he received a copy of Dr. Kaimal's report. Since suit was not filed until October 22, 1986, under either scenario plaintiff's cause of action had prescribed.

JOHNS-MANVILLE BANKRUPTCY
Plaintiff argues his case has not prescribed because the automatic stay provision entered in the Johns-Manville bankruptcy litigation in 1982 barred plaintiff from filing suit against Johns-Manville prior to July 28, 1989, when its bankruptcy stay was lifted. It must be noted that the judgment appealed does not sustain an exception of prescription as to Johns-Manville. Nevertheless, plaintiff argues that because Johns-Manville is solidarily liable with defendants/appellees herein, prescription is interrupted as to them.
In this case plaintiff was clearly precluded from proceeding against Johns-Manville during the pendency of the bankruptcy. However, this was a suspension of prescription *158 as to Johns-Manville under LSA-C.C. art. 3503, not an interruption. It is only an interruption of prescription, not a suspension, which is effective against other solidary obligors. Cockerham v. Armstrong World Industries, 717 F.Supp. 433 (M.D.La.1989). Therefore, prescription was not interrupted as that term is contemplated by article 3503 and, as to all other defendants, prescription was not interrupted or suspended as a result of the Johns-Manville bankruptcy.
For the foregoing reasons, we affirm the judgment appealed. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
THIBODEAUX, J., dissents.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.