United States Court of Appeals,

Fifth Circuit.

No. 94-30229.

Celeste ROGERS and Ronald Glen Rogers, Plaintiffs-Appellants,

v.

CORROSION PRODUCTS, INC., Defendant-Appellee.

Jan. 12, 1995.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before HIGGINBOTHAM, SMITH, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ronald Rogers ("Rogers") appeals the district court's dismissal of his diversity-based delictual action against Corrosion Products, Inc. ("CPI"), on statute of limitations grounds. He argues that the prescriptive period was suspended, either under Louisiana law or the Bankruptcy Code, when CPI was placed involuntarily into chapter VII bankruptcy. Concluding that this event did not stop the running of the prescriptive period, we affirm.

I.

Rogers, a worker for Chevron, allegedly was injured when working at a CPI facility in Belle Chasse, Louisiana, on June 20, 1991. On March 23, 1993, Rogers, basing his suit upon diversity of citizenship, filed a Louisiana delictual action in federal court.

Under Louisiana law, however, the period for bringing delictual actions is one year. LA.CIV.CODE ANN. art. 3492 (West 1994). Accordingly, CPI asserted the affirmative defense of

liberative prescription and moved for summary judgment. Rogers opposed the motion, arguing that bankruptcy proceedings had suspended the running of the prescriptive period.

On February 10, 1992, bankruptcy proceedings had been instigated against CPI by the filing of a petition for involuntary relief by several of CPI's creditors. An automatic stay was put into effect until the petition was dismissed on December 3, 1992.

Notice of the dismissal was issued on December 7, 1992. Because Rogers could not bring suit during the period of the stay, he argued that this period should not be counted in determining the prescriptive period. The district court disagreed, however, and held that Rogers was time barred.

## II.

Rogers argues that the running of the prescriptive period was suspended by either Louisiana law or the Bankruptcy Code. The questions presented are purely matters of law that we review *de novo. FDIC v. Dawson,* 4 F.3d 1303, 1308 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994).

## A.

The one-year prescriptive period of art. 3492 may be increased either by interruption, which restarts the prescriptive period, or by suspension, which only stops it for the applicable time. *Compare* LA.CIV.CODE ANN. art. 3466 (effect of interruption) *with* LA.CIV.CODE ANN. art. 3477 (effect of suspension). On the face of the Louisiana Civil Code, the exceptions that allow an extension of the prescriptive period are limited to those legislatively

2

created.  *See* LA.CIV.CODE ANN. art. 3467 ("Prescription runs against all persons unless exception is established by legislation.").[1]

Louisiana law, however, has long recognized a judicial doctrine, *contra non valentem agere non currit praescripto,*[2] which suspends the running of the prescriptive period for a limited category of claimants who are unable to bring suit.  This doctrine continues to be recognized as an implied doctrine of article 3467.  *See* LA.CIV.CODE ANN. art. 3467 revision cmts.—1982 (d) (stating that the jurisprudence of *contra non valentem* continues to be relevant); *Plaquemines Parish Comm'n Council v. Delta Dev. Co.,* 502 So.2d 1034, 1055 (La.1987).

Under Louisiana law, the *contra non valentem* doctrine has been parsed into four distinct categories.  The doctrine may suspend the running of the prescriptive period where (1) there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;  (2) there was some condition coupled with the contract or connected with the proceedings that prevented the creditor from suing or acting;  (3) the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.  *Whitnell v. Menville,* 540 So.2d 304, 308 (La.1989);

---

[1]Rogers concedes that there is no applicable, legislatively imposed suspension exception for bankruptcy proceedings.

[2]"No prescription runs against a person unable to bring an action."  BLACK'S LAW DICTIONARY 327 (6th ed. 1990).

3

*Plaquemines Parish,* 502 So.2d at 1054-55; *Corsey v. State Dep't of Corrections,* 375 So.2d 1319, 1321-22 (La.1979).

At issue here are exceptions two and three.[3] Rogers argues that the bankruptcy proceeding is either "connected to the proceedings" so that Rogers could not sue, or CPI availed itself of the bankruptcy "safe harbor" and should not now be able to use it as a bar to Roger's suit. Rogers believes that the limited caselaw in this area is dispositive on the prescription issue.

Rogers cites two case that moderately support his position on exception two. Both cases, however, discuss the issue only in *dicta.* In *Cole v. Celotex Corp.,* 611 So.2d 153, 157-58 (La.App. 3d Cir.1992), *rev'd,* 620 So.2d 1154 (La.1993), the delictual plaintiff proceeded against a number of defendants, including Johns-Manville. The trial court, however, dismissed the action against the other defendants on prescription grounds. On appeal, the plaintiff argued that if the defendants were solidarily liable, suspension of the prescriptive period for one would apply to all of them. The prescriptive period was suspended for one, he argued, because defendant Johns-Manville filed for bankruptcy during the pendency of the suit, an act that the court assumed "clearly precluded [the plaintiff] from proceeding against Johns-Manville." *Id*. at 157. Nevertheless, the assumption was not essential to the conclusion,

---

[3]The district court interpreted exception one as applying only to situations of physical impossibility. *See National Fire Union Ins. Co. v. Ward,* 612 So.2d 964, 968 (La.App.2d Cir.1993) ("A "legal cause' in this context appears to refer to a situation such as the courts being closed because of wartime conditions...."). Rogers says that exception one arguably applies, but he fails to brief this issue.

as the court found that only interruption, rather than suspension, would apply to all solidary obligors.  *Id.* at 158.

In *Cockerham v. Armstrong World Indus.,* 717 F.Supp. 433 (M.D.La.1989), a court faced the same issue as in *Cole* (as well as one of the same defendants).  Again, the court assumed that under Louisiana law, bankruptcy proceedings would suspend, but not interrupt, the prescriptive period.  *See id.* at 434 ("[Bankruptcy proceeding] may well amount to a suspension of prescription as to Johns-Manville under Article 3472 of the Louisiana Civil Code.").  This assumption was not necessary to support the holding.

Other courts in Louisiana that have directly addressed this issue have reached a contrary result.  In *Christen v. Al Copeland Enters.,* 635 So.2d 596, 598 (La.App. 3d Cir.1994), the court, with little discussion, disavowed the *Cole dictum,* stating that the "[p]laintiff's claim for suspension of prescription because of the bankruptcy automatic stay is without merit."  *See also Lee v. Champion Ins. Co.,* 591 So.2d 1364, 1366 (La.App. 4th Cir.1991) (holding that "liquidation" does not bar filing of suit or suspend the prescriptive period).

In diversity cases, we apply substantive state law.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  Louisiana's highest court, however, has not decided whether *contra non valentem* applies to proceedings stayed by bankruptcy filings.  Therefore, we must make an "*Erie* guess" on how the court would rule.  *See Labiche v. Legal Sec. Ins. Co.,* 31 F.3d 350, 352 (5th Cir.1994);  *Transcontinental Gas Pipe Line Corp. v.*

5

*Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992) ("When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.") (footnote omitted). The decisions of lower state courts should be given some weight, but they are not controlling where the highest state court has not spoken on the subject. *Commissioner v. Estate of Borsch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). " "[A]n intermediate appellate state court ... is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Id.* (ellipsis in original citation and emphasis omitted).

Here, on exception two of the doctrine of *contra non valentem,* we are faced with the holdings of two different Louisiana appellate courts that, albeit with sparse reasoning, refuse to apply *contra non valentem* to bankruptcy stays. The contrary authority is found only in *dicta.* Therefore, the jurisprudence here counsels us not to broaden suspension to include bankruptcy proceedings.

Moreover, as Louisiana's highest court has often noted, *see, e.g., Plaquemines,* 502 So.2d at 1057, the basic principle of the doctrine is equity. Rogers has failed to show how CPI has acted unfairly or taken advantage of him. CPI did not affirmatively seek to avoid suit by filing for protection under the Bankruptcy Code; rather, CPI was forced into bankruptcy when several of its creditors filed a petition for involuntary bankruptcy.

6

Rogers, on the other hand, failed to pursue his suit. Like any other creditor of a debtor, he could have petitioned the court to lift its stay. *See* 11 U.S.C. § 362(d) (allowing a party in interest to petition the bankruptcy court to terminate, annul, modify, or condition a stay upon a showing "for cause"). If the bankruptcy court does not respond to the petition within [the prescribed period], the stay is automatically "terminated with respect to the party making the request...." *Id.* § 362(e). Finally, under *id.* § 108(c)(2), a party's right to sue is preserved for thirty days after the termination of the stay, regardless of the prescription period. Even without petitioning the bankruptcy court to lift the stay, Rogers could have filed suit within thirty days of the dissolution of the stay. Instead, he "slept on his rights."

Rogers does not cite any authority on the issue of exception three, which provides relief for plaintiffs who have been prevented from filing because of the actions of the other party. *See* *Plaquemines Parish,* 502 So.2d at 1056. Like exception two, this exception is based generally upon equitable principles and is applied in situations involving "concealment, fraud, misrepresentation or other ill practices." *Id.* Because there was no inequitable action on the part of CPI, we find this exception does not apply. In sum, we hold that *contra non valentem* does not suspend the running of the prescriptive period because of the imposition of an automatic stay under the Bankruptcy Code.

B.

If Louisiana law does not suspend prescription, the next step is to examine the Bankruptcy Code to determine whether it provides a separate basis for suspension. The "Extension of Time" provision of the Code provides:

> [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362 ... of this title....

11 U.S.C. § 108(c). Both parties agree this is the only pertinent section of the Code. They differ in interpretation, however, with CPI finding no separate federal basis for tolling state prescriptive periods and Rogers arguing that § 108(c) itself tolls the prescriptive period.

We are not the first circuit to face this issue. Panels of both the Second and Ninth Circuits have examined the language and legislative history of this section of the Code. Unfortunately, they have created a potential split in result. Other federal courts have divided likewise.

The most current Second Circuit opinion, reading the plain words of the statute,[4] interpreted it to "merely [to] incorporate[

---

[4]While the Second Circuit's reading of § 108(c) in *Aslanidis* could have been based solely upon the plain language of the statute, the court nonetheless also examined the legislative history and found that it supported its interpretation. It found that § 108(c)(1) only referred to "special suspensions" that are found in other non-bankruptcy statutes. *Id.* at 1073; *see* 2 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 108.04 (15th ed. 1993);

] suspensions of deadlines that are expressly provided in *other* federal or state statutes." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993). The section did not provide a separate ground to toll statutes of limitations. *Id.* Instead, it only extended time for filing suit for 30 days "after notice of termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date." *Id.; see also West v. United States (In re West),* 5 F.3d 423, 425-27 (9th Cir.1993) (holding that suspension was required by section of Internal Revenue Code incorporated by § 108(c)), *cert. denied,* --- U.S. ----, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994).

The court in *Aslanidis* was forced to contend with an earlier Second Circuit decision, *Morton v. National Bank of New York City (In re Morton),* 866 F.2d 561 (2d Cir.1989), which had held that "11 U.S.C. § 108(c) tolls the [state] ten-year period limiting judgment liens on real property until the automatic stay is terminated." *Id.* at 562. In *Morton,* a bank that had a lien on the debtor's property faced the end of the state ten-year period in which it had to extend or enforce its lien. The debtor, who was in bankruptcy and thus had stayed all judgments against him, argued that the lien had expired, because the bank was foreclosed from renewing its lien.

The court examined the purpose of § 108(c) and the thirty-day provision of § 108(c)(2) and held that the lien had not expired.

---

H.R.Rep. No. 595, 95th Cong., 1st Sess. 318, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6275.

What the court did not decide explicitly was whether the ten-year period was actually suspended (as the language of the opinion suggests), or whether, instead, the bank merely had thirty days after the lifting of the stay to act (as the language of the section suggests).

Accordingly, when the Second Circuit again addressed this issue in *Aslanidis,* that panel distinguished *Morton* by finding that it only addressed what happened during the period of the stay (the lien was preserved),[5] and the Code allowed a thirty-day savings period even if the limiting time had expired.  7 F.3d at 1074.

The Ninth Circuit, citing *Morton,* wrote an equally opaque decision in *Miner Corp. v. Hunters Run Ltd. Partnership (In re Hunters Run Ltd. Partnership),* 875 F.2d 1425, 1429 (9th Cir.1989). Again, the general question was whether § 108(c) applied to the time limits of enforcement actions of liens.  The court held that it did and that the time period was "tolled."  *Id.*  The court did not decide whether the "tolling" meant that the time period ceased to run, or simply that a thirty-day grace period existed under the statute if the time period had run.

Some other courts have reached the same result as did the

_____

[5]A reading of the cases cited in *Morton* to support its position on tolling reveals that they stand for the more general proposition that § 108(c) applies to the time limits of lien enforcement (statutes of duration) as well as the more generally applicable time limits of statutes of limitation.  *See Victoria Grain Co. v. Janesville Elevator Constr., Inc. (In re Victoria Grain Co.),* 45 B.R. 2 (Bankr.D.Minn.1984);  *Meek Lumber Yard, Inc. v. Houts (In re Houts),* 23 B.R. 705 (Bankr.W.D.Mo.1982); *First Am. Title Co. v. Design Builders, Inc. (In re Design Builders, Inc.),* 18 B.R. 392 (Bankr.D.Idaho 1981).

10

Second Circuit.[6]  Other courts, perhaps misled by the ambiguity of some of the prior decisions, have held that the total period of the stay is added to the time allowed to file suit.[7]

---

[6]*See Mamer v. Apex R.E. & T.,* 852 F.Supp. 870, 872 (E.D.Mo.1994) (adopting reasoning of *Aslanidis* );  *Farm Credit Bank v. Vallee,* 148 B.R. 1021, 1023 (W.D.La.1992) ("Federal law *extends* a prescriptive period 30 days after filing of an order terminating bankruptcy.");  *Pettibone Corp. v. Baker (In re Pettibone Corp.),* 110 B.R. 848, 853 (Bankr.N.D.Ill.1990) (holding that unless applicable federal or state law suspending running of limitations, only a 30-day "short filing period" exists extending claim), *aff'd,* 119 B.R. 603 (N.D.Ill.1990), *vacated,* 935 F.2d 120 (7th Cir.1991);  *In re Coan,* 96 B.R. 828, 831-33 (Bankr.N.D.Ill.1989) (holding that § 108(c) extends period for thirty days);  *Steinberg v. National Survey Serv., Inc. (In re Chemisphere Partners),* 90 B.R. 380, 381-82 (Bankr.N.D.Ill.1988) (holding that state law incorporated by § 108(c) tolled the statute of limitations);  *Grotting v. Hudson Shipbuilders,* 85 B.R. 568, 569-70 (W.D.Wash.1988) (finding that plain language, legislative history, and limited reading of statute "comports best with expeditious and fair administration of bankrupt's estate");  *Wilkey v. Union Bank & Trust Co. (In re Baird),* 63 B.R. 60, 62-63 (Bankr.W.D.Ky.1986) (reading plain language and legislative history to find statute *extends* (not *suspends* ) time to file for 30 days after end of stay);  *cf. Pettibone v. Easley,* 935 F.2d 120, 121 (7th Cir.1991) ("Plaintiffs who had filed during the bankruptcy had 30 days after the termination of the stay to re-file their cases with assurance that they could not be deemed untimely.").

[7]Rogers, for example, cites *Major Lumber Co. v. G & B Remodeling, Inc.,* 817 S.W.2d 474, 477-78 (Mo.Ct.App.1991), which holds "that § 108(c) is not restricted to tolling only those state statutes that have special suspension provisions." Accordingly, the court, in applying § 108(c), did not count the time of the stay in the limitations period, even though state law did not require that result.  *Major Lumber* cites several other state court decisions that it believes do likewise.  *See, e.g., Garbe Iron Works, Inc. v. Priester,* 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422, 424-25 (1983);  *Wells v. California Tomato Juice, Inc.,* 47 Cal.App.2d 634, 118 P.2d 916, 918-19 (1941).  As noted above, some federal cases such as *Morton* and *Hunters Run* could be read to hold the same.  *See also In re Richards,* 994 F.2d 763, 765 (10th Cir.1993) ("For example, 11 U.S.C. § 108 suspends the statute of limitations for actions outside of bankruptcy for the pendency of the current bankruptcy provisions.") (dictum).

11

We base our decision on the plain words of the statute and find that § 108(c) does not create a separate tolling provision. *See West Va. Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 1146-47, 113 L.Ed.2d 68 (1991) (holding that legislative history is irrelevant for interpreting statutes whose text is unambiguous). The statute plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through § 108(c). Otherwise, a party must file suit within the thirty-day grace period after the end of the stay. We need not and do not reach the legislative history and policy arguments.

Our conclusion is not contrary to that of the Ninth Circuit. Its decisions simply use the word "tolling" to mean "extend." Section 108(c) extends the period in which a party must file suit in order to preserve the claim for whatever period the stay is in force plus thirty days. Because a party may not file suit during the duration of the stay, the thirty-day period becomes the only functional period in which to commence suit. We reject cases such as *Major Lumber,* which hold to the contrary.

For the reasons discussed above, the judgment of the district court is AFFIRMED.