665 So.2d 500 (1995)
Evangelia and Gerasimos KAMBITSIS
v.
SCHWEGMANN GIANT SUPERMARKETS, INC.
No. 95-CA-478.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 1995.
*501 Virgil A. Lacy, III, Metairie, for defendant-appellee.
Roger D. Phipps, New Orleans, for plaintiffs-appellants.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
GAUDIN, Judge.
This is an appeal from the granting of an exception of prescription in the 24th Judicial District Court. We affirm.
The granting of this exception dismissed the fourth suit filed by Mr. and Mrs. Gerasimos Kambitsis as a result of incidents in a Schwegmann's supermarket on January 24, 1984. On that day, Mrs. Kambitsis was detained by two security guards for alleged shoplifting.
Mrs. Kambitsis and her husband filed suit in the 24th Judicial District Court contending false imprisonment. The case was set for trial on July 30, 1991. Schwegmann's sought a continuance because a witness, Deidre Brazley, failed to appear despite being subpoenaed by Schwegmann's. After the trial judge denied the request, the case settled.
Subsequently, Mr. and Mrs. Kambitsis tried unsuccessfully to nullify the settlement because of fraud and ill practices. Schwegmann's attorney, they argued, had frightened Brazley into not appearing in court and giving testimony in support of the Kambitsis claims. The settlement amount, consequently, was inadequate.
Mr. and Mrs. Kambitsis then filed two lawsuits in federal courts, one in Florida on July 24, 1992 and one in the Eastern District of Louisiana on June 24, 1993. They charged Schwegmann's attorney with intimidating Brazley and causing her not to appear for trial. Named defendants in each proceeding were Schwegmann's, the trial judge, court reporter, sheriff, district attorney, security guards and others.
The suit in Louisiana was dismissed pursuant to Schwegmann's motion for summary judgment premised on the fact that the claims had prescribed. In dismissing this suit, the federal district court judge stated:
"I conclude that the prescriptive period governing the plaintiffs' claims commenced no later than July 31, 1991. Mr. Kambitsis' affidavit reveals that by July 31, 1991, the plaintiffs were aware of most, if not all, of the conspiratorial acts allegedly committed by the defendants, as well as the injuries caused by those acts. Plaintiffs did not commence the present suit until ... almost two years after the prescriptive period commenced. Other jurisdictions might possibly afford plaintiffs a longer period within which to assert their claims. But I have no alternative but to apply Louisiana law to both the state law and federal claims, and Louisiana clearly mandates a one-year prescriptive period. Thus ... plaintiffs' claims have prescribed."
*502 Mr. and Mrs. Kambitsis had the Florida action transferred to the Eastern District of Louisiana. This suit, too, was dismissed by summary judgment based on prescription, another federal district judge finding, like the trial judge in the earlier Eastern District case, that the plaintiffs were aware of what they believed to be fraudulent and conspiratorial acts no later than July 31, 1991.
On August 2, 1994, Mr. and Mrs. Kambitsis instituted the instant suit in the 24th Judicial District Court, again trying to set aside the settlement because of fraud and ill practices. Exceptions of res judicata and prescription were filed and a hearing was held on January 27, 1995.
The record in this case does not convincingly indicate that prescription started running on July 31, 1991, as found by federal judges, but it is apparent that Mr. and Mrs. Kambitsis knew enough by September 2, 1992 to either file suit or investigate at greater length. On September 2, 1992, Brazley signed an affidavit for Mr. and Mrs. Kambitsis saying that she had been a checkout cashier on January 24, 1984 when she saw security guards arrest Mrs. Kambitsis in a harsh, unruly manner and forcibly walk her through the store, with her arm bent behind her, and into a detaining office. Brazley said she heard Mrs. Kambitsis "cry with pain."
Further, in the affidavit, Brazley stated:
"That in the month of July, 1991 she had been harassed on the telephone by people who had identified themselves as attorneys from a law firm representing Schwegmann Giant Supermarket. This attorney demanded her to appear in court and help them defend the security guards and Schwegmann Supermarkets.
"That approximately four or five more times she had told those attorneys not to subpoena her and bring her to court because she had nothing to say to help them defend the guards or Schwegmann.
"That she was fearful to go to court and say something in error and harm an innocent person.
"That she was fearful to go to court and say something the guards or Schwegmann would not like."
Although Mr. and Mrs. Kambitsis admit that they earlier knew something about the allegedly harassing phone calls to Brazley, they (Mr. and Mrs. Kambitsis) had no actual proof until September 27, 1993 when Brazley actually told them of the threatening calls.
Following the January 27, 1995 hearing, the trial judge said from the bench:
"I'm going to grant the Exception of Prescription. It is abundantly clear from this record that they knew all of these things in a timelyin a fashion where they should have timely accomplished what they needed to accomplish.
"The Kambitsis need to put this behind them totally and completely. This needs to end. I hope it does. I'm going to grant the Exception of Prescription based upon the records that they filed. The petition in this court record, it all indicates that they knew all of this some months before this should have been filed ..."
This ruling is correct. Judgments obtained by fraud or ill practices may be annulled but appropriate action must be taken within one year of the discovery of acts upon which fraud or ill practice would be based. See LSA-C.C.P. art. 2004. Mr. and Mrs. Kambitsis had sufficient information by September 2, 1992 to file suit in an attempt to void the settlement or at the very least to investigate further.
This state's courts have consistently held that Art. 2004 prescription starts running on the date the injured party discovers or should have discovered information on which a cause of action might be based. Whenever there is notice enough to excite attention and put a person on his or her guard and suggest further investigation, this is tantamount to knowledge or notice of everything to which an inquiry may lead. Information or knowledge suggesting an inquiry is sufficient to start the running of prescription. See Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970); also White v. Willis-Knighton Med. Cntr., 632 So.2d 1198, 1199 (La.App. 2 Cir. 1994); Adams v. First Nat. Bank of Commerce, 644 So.2d 219, 223 (La.App. 4 Cir. 1994); Richardson v. Avondale Shipyards, *503 Inc., 600 So.2d 801, 804 (La.App. 5 Cir. 1992); and Cole v. Celotex Corp., 611 So.2d 153, 155 (La.App. 3 Cir.1992)."
There is very little if any support in the jurisprudence for appellants' argument that prescription did not begin to run until they were, in their minds, positive of the extent and full nature of the harassment.
AFFIRMED.