11 BYRNES, Judge.
In February of 1983 a claim by the plaintiff-appellant, Hartwig Moss Insurance Agency, Ltd., against the defendants, Daniel, Kevin and Alice Kelly, (hereinafter referred to collectively as “the Kellys”), was reduced pursuant to a settlement “Agreement” to a consent judgment. When Hartwig Moss filed a petition in the district court in January of 1996 in an attempt to enforce this judgment and the “Agreement,” the trial court dismissed Hartwig Moss’ claim based on the Kellys’ plea that the Hartwig Moss judgment had prescribed in 1993 based on the ten year prescription applicable to money judgments. LSA-C.C. art. 3501. We affirm.
The consent judgment obligated the Kellys to pay Hartwig Moss $70,000.00 spread over 30 monthly installments, but the installments were not to commence until after the Kellys’ obligation to the Internal Revenue Service had been satisfied.
Hartwig Moss’ argument in chief is that the consent judgment is in the nature of a bilateral contract. City of New Orleans v. Vanlangendonck, 433 So.2d 432, 433 (La.App. 4 Cir.1983); Martin Forest Products v. Grantadams, 616 So.2d 251 (La.App. 2 Cir.), writ denied, 619 So.2d 580 (La.1993). Accordingly, Hartwig Moss contends that the rules governing the prescription of contractual obligations control rather than the rules governing the prescription of judgments.[1] We disagree.
The cases cited by Hartwig Moss stand only for the proposition that consent judgments should be viewed as bilateral contracts for purposes of determining the validity of the consent and issues relating to consent.[2] Hartwig Moss does not contest the validity of its consent to the judgment. The cases cited by Hartwig Moss involved attempts to invalidate consent judgments. In the instant case the Kellys do not question the validity of the judgment, even in the alternative. Hartwig Moss clearly does not challenge the validity of the judgment as it is the party seeking to enforce it. There are no cases holding or even suggesting that this Court should apply the prescriptive rules of contracts to consent money judgments.
Hartwig Moss suggests several ways in which a consent judgments partakes of as *198 pects of a bilateral contract. However, we may safely assume that it was at Hartwig Moss’ instigation that the settlement “Agreement” between the parties was reduced to a consent judgment as it could only be in its interest to do so. An agreement in the form of a consent judgment has advantages when it comes time for enforcement and collection, which after all are the primary purposes of ^obtaining a money judgment. Were this not the case Hartwig Moss would have had no incentive to reduce the “Agreement” to judgment form.
As the question of prescription is one that relates to the enforcement and collection of the consent judgment (which relates to the nature of the consent judgment qua judgment) rather than one that goes to the question of the validity of the underlying consent to that judgment[3] (which relates more to the consensual or contractual aspect of the consent judgment), there is no reason to deviate from the ten year prescriptive period applicable to money judgments provided by LSA-C.C. art. 3501. The consensual or contractual aspects of the judgment are not in dispute.
Nor do we find that the “Agreement” has a life of its own separate and apart from the consent judgment. The “Agreement” states that: “The parties agree that this Agreement shall form the basis of an appropriate Consent Judgment to be entered in the lawsuit.” The provisions of the “Agreement” are embodied in the consent judgment. We find that the provisions of the “Agreement” are subsumed in and superseded by the consent judgment. Consent judgments are given res judicata effect. Morris v. St. Bernard Parish Council, 95-0685 (La.App. 4 Cir. 10/26/95); 663 So.2d 533. LSA-R.S. 13:4231(1) provides:
If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment. [Emphasis added.]
UOnce the “Agreement” was reduced to judgment, Hartwig Moss had no further rights under the “Agreement.”
For purposes of argument we will accept as true the assertions by Hartwig Moss that the Kellys went into voluntary bankruptcy in 1984 where they remained for more than seven years until dismissed in April of 1991 approximately during which time Hartwig Moss was prevented from attempting to enforce its judgment. Therefore, Hartwig Moss contends that pursuant to the doctrine of contra non valentam prescription on its judgment was suspended which would have the effect of extending the time in which it could attempt enforcement of this judgment until the year 2000. Hartwig Moss’ argument might be more persuasive had suit to enforce its judgment been the only means available to it to preserve the viability of its judgment from the effects of prescription.[4] But LSA-C.C. art. 3501 specifically provides that money judgments may be revived limitless times for successive ten year periods and by this means prescription may be forestalled indefinitely. The Kellys’ bankruptcy did not prevent Hartwig Moss from reviving its judgment on a timely basis. Guertler v. Barlow Woods, Inc., 230 Ill. App.3d 933, 172 Ill.Dec. 745, 596 N.E.2d 24 (1992).
Although Guertler is an Illinois case, its reasons for finding that a revival of a judgment is not a violation of the automatic bankruptcy stay and for refusing to suspend the prescriptive period for the revival of a judgment [5] because of a bankruptcy stay are valid in Louisiana:
IsA revival of a judgment is not the creation of a new judgment, but merely a continuation of that being revived. [Citations omitted.] The lien is not enlarged by a judgment’s revival, and the property of *199 the estate available to general creditors is not threatened; indeed, extension under Illinois law merely allows the lienholder to maintain the status quo. [Citation omitted.] An attempt by Barlow Woods to revive its judgment against Cavazos in state court, therefore, could not have violated the automatic stay....
Guertler, 172 Ill.Dec. at 748, 596 N.E.2d at 27.
We know of no idiosyncrasy of the Civil Law in general, or Louisiana law in particular, that would warrant this Court to reach a contrary conclusion.
Even had the automatic stay prevented Hartwig Moss from reviving its judgment during its pendency we would not find that prescription had been suspended. Christen v. Al Copeland Enters., 93-1170 (La.App. 3 Cir. 4/6/94); 635 So.2d 596, 598; Rogers v. Corrosion Products, Inc., 42 F.3d 292 (5th Cir. (La.) 1995), cert, denied, — U.S. —, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).[6]
In Rogers when the court held “that contra non valentam does not suspend the running of the prescriptive period because of the imposition of an automatic stay under the Bankruptcy Code” [7] the court also discussed the plaintiffs lack of diligence in pursuit of his claim:
Rogers, on the other hand, failed to pursue his suit. Like any other creditor of a debtor, he could have petitioned the court to lift its stay.... Finally, under id. Sec. 108(c)(2), a party’s right to sue is preserved for thirty days after the termination of the stay, regardless of |6the prescription period. Even without petitioning the bankruptcy court to lift the stay, Rogers could have filed suit within thirty days of the. dissolution of the stay. Instead, he “slept on his rights.” [Emphasis added.]
Rogers, 42 F.3d at 295.
The Rogers court felt that the thirty day period following the termination of the stay provided by the Bankruptcy Code allowing the pursuit of claims “regardless of the prescription period” was adequate. In the instant case Hartwig Moss according to its own reckoning would have had from April 1991 when the Kellys’ bankruptcies were dismissed until February of 1993 when the ten year revival period expired in which to revive its judgment, a period of over twenty months. Moreover, it seems unlikely that Hartwig Moss would have had any reason to consider reviving its judgment prior to April of 1991 regardless of the bankruptcy. To put it another way, Hartwig Moss would be hard pressed to show that its failure to take steps to revive its judgment was in any way caused by the bankruptcy stay. This is not a case that cries out for equitable relief.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

LANDRIEU, J., concurs with the result.

. If we were to apply contractual prescriptive rules, the ten year period would begin to run when the contract was breached. Hartwig Moss contends that in this case the breach did not occur until sometime in 1990 when the Kellys' satisfied their obligations to the IRS.

. For example, a party to a consent judgment cannot directly appeal the judgment. McDaniel v. McDaniel, 567 So.2d 748 (La.App. 2d Cir.1990). He must first invalidate the consent.

.Where there is a challenge to the underlying consent upon which a consent judgment is based it would raise the question of the validity or nullity of the judgment, and the time constraints for nullifying judgments would be applicable.

. This statement should not be read as a suggestion of how this Court would treat prescription as affected by bankruptcy.

. According to the Guertler court the period for revival of a judgment in Illinois is seven years. 172 Ill.Dec. at 747, 596 N.E.2d at 26.

. We are aware of dicta in Cole v. Celotex Corp., 611 So.2d 153, 157-58 (La.App. 3 Cir.1992), reversed, 620 So.2d 1154 (La.1993), and Cocker-ham v. Armstrong World Industries, 717 F.Supp. 433 (M.D.La.1989), that would suspend prescription during the pendency of the automatic stay, but do not find those cases persuasive.

. Rogers, 42 F.3d at 295.