In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00300-CV


____________________



CEDYCO CORPORATION, Appellant



V.



MARVIN WHITEHEAD, Appellee






On Appeal from the 1A District Court


Jasper County, Texas


Trial Cause No. 28202






 MEMORANDUM OPINION


 This case involves a judgment rendered in 1984 and a creditor's attempt to execute
on the judgment twenty-three years later in 2007. The trial court rendered summary
judgment in favor of the debtor, Marvin Whitehead. The creditor, Cedyco Corporation,
appeals and contends no summary judgment evidence supported Whitehead's motion. We
affirm.


I. Background


 On March 16, 1984, Emery Financial Corporation obtained a judgment against Marvin
Whitehead and others who are not parties to this appeal. The judgment was rendered in
Emery Financial Corporation v. Marvin Whitehead, et al for the principal sum of
$244,086.33. Ownership of the judgment changed several times before Cedyco acquired it
in 1996. 

 In May 1984, Emery filed an abstract of the judgment in the county records of Jasper
County, Texas, Whitehead's county of residence. Between March 1984 and December 1985,
Emery and subsequent assignees obtained several writs of execution from Jasper County's
district clerk. On December 6, 1985, the district clerk prepared another writ of execution
against Whitehead. Shortly after on February 3, 1986, Whitehead filed a bankruptcy petition.

 On July 19, 1994, the Bankruptcy Court for the Eastern District of Texas issued an
order dismissing Whitehead's case. Several months earlier, however, on February 16, 1994,
the judgment's owner had obtained a writ of execution from the district clerk and forwarded
it to the Jasper County sheriff with instructions that the sheriff needed to verify whether
Whitehead's bankruptcy was still active before attempting collection. The record is silent
concerning whether the sheriff returned the writ or tried to execute the writ.

 Shortly after Cedyco acquired the judgment in 1996, the district clerk prepared two
instruments-a writ of execution and an abstract of title, both showing that Cedyco owned the
judgment. The instruments are dated March 26, 1997. The record, however, contains no
sheriff's return for the writ nor does the record show whether the district clerk indexed or
recorded the abstract of title.

 Almost nine years after the district clerk issued the 1997 writ of execution, Cedyco
began new collection efforts. On January 25, 2006, the district clerk issued another writ of
execution. The sheriff's return of this writ, marked nulla bona, was filed with the district
clerk on April 19, 2006. (1) Subsequently, on January 3 and March 21, 2007, the district clerk
prepared additional writs of execution.

 In April 2007, Whitehead filed a declaratory judgment action seeking to have the 1984
judgment against him declared void. His petition also sought a temporary restraining order
preventing Cedyco from selling or attempting to sell certain real property. (2) Whitehead
contended that the judgment had become dormant, that collection or execution was barred by
section 31.006 of the Texas Civil Practice and Remedies Code, and that the judgment had
been satisfied before its assignment to Cedyco. 

 In 2008, Whitehead filed a motion for summary judgment in the declaratory judgment
action. Whitehead contended that his evidence showed as a matter of law that Cedyco's
judgment was unenforceable. Whitehead contended that the underlying judgment lien either
had expired because of a failure to record a second abstract of judgment or, alternatively,
because no additional writs of execution had been properly issued within a ten-year period
commencing with the district clerk's issuance of the 1985 writ of execution. In its summary
judgment response, Cedyco claimed that Whitehead failed to prove his cause of action as a
matter of law and that the time limits for Cedyco to revive its judgment were tolled from the
date that Whitehead initially filed for bankruptcy in 1986 until 1994, the date Whitehead's
bankruptcy was dismissed. Cedyco presented no summary judgment evidence with its
response but in its response referenced various documents that Whitehead attached to his
motion. The trial court granted summary judgment in Whitehead's favor.

 On appeal, Cedyco raises a single issue in which it contends the trial court erred in
rendering summary judgment for Whitehead because there was no summary judgment
evidence supporting his motion.

II. Standard of Review


 We review summary judgments de novo. See Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for a traditional summary
judgment bears the burden of showing that no genuine issue of material fact exists and that
it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); see also Knott, 128
S.W.3d at 216. If the movant establishes a right to summary judgment, the burden shifts to
the nonmovant to present controverting evidence raising a genuine issue of material fact.
Huckabee v. Time Warner Entm't Co. L.P., 19 S.W.3d 413, 420 (Tex. 2000). Because the
judgment here does not specify the grounds for the trial court's ruling, we must affirm the
summary judgment if any of the theories presented to the trial court and preserved for
appellate review are meritorious. See Knott, 128 S.W.3d at 216. "Declaratory judgments
decided by summary judgment are reviewed under the same standards of review that govern
summary judgments generally." Cadle Co. v. Bray, 264 S.W.3d 205, 210 (Tex. App.-
Houston [1st Dist.] 2008, pet. denied); see Tex. Civ. Prac. & Rem. Code Ann. § 37.010
(Vernon 2008). 

III. Evidence


 The only summary judgment evidence presented to the trial court was a document and
accompanying affidavit from Whitehead's attorney. The attorney's affidavit states: "The
history of judgment attached as Summary Judgment Evidence is a true and correct copy of the
history of judgment filed in this cause by Cedyco Corporation." Cedyco filed the History of
Judgment ("History") on August 27, 2007, when the trial court heard arguments on
Whitehead's restraining order. The History includes a statement from Cedyco's president and
copies of numerous documents related to various creditors' efforts to establish and maintain
the judgment lien against Whitehead. The unsworn statement of Lance Dreyer, President of
Cedyco, initially filed by Cedyco in response to Whitehead's request for injunctive relief,
says: 

 The above reflects the history of the Final Judgment rendered against Marvin
Whitehead, et al. in Cause No. 12,350 . . . from the date of Judgment on March
16, 1984 through the last Execution issued by the Court on March 22, 2007. 
This History of Judgment shows the dates of the Executions issued and
Garnishment issued and the amounts collected and the dates of the collections. 
The Judgment remains unpaid and is valid because Executions/Garnishments
have been issued every ten years or less.

 In its response to Whitehead's motion for summary judgment, Cedyco did not lodge 
any objections to Whitehead's summary judgment evidence or to counsel's accompanying
affidavit. Further, the record does not reveal that Cedyco made any attempt, such as a motion
to strike, to preclude the trial court from considering Whitehead's summary judgment proof,
nor does the record reflect that Cedyco brought any claim to the trial court's attention that the
summary judgment evidence was inaccurate or incomplete. Further, in the summary judgment
proceeding and on appeal, Cedyco cites to various documents in the History in support of its
arguments.
IV. Analysis



 Cedyco argues Whitehead failed to establish as a matter of law that the 1984 judgment
against him was null and void. We disagree.

 The summary judgment evidence shows that the judgment against Whitehead was
rendered on March 16, 1984. In the absence of a writ of execution issuing within ten years,
a judgment becomes dormant. See Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a) (Vernon
2008). "Issued" under section 34.001, however, "means more than mere clerical preparation
of the writ and requires that it be delivered to an officer for enforcement." Williams v. Short,
730 S.W.2d 98, 99 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e).

 In this case, the evidence shows that a writ of execution was issued on December 6,
1985, and Whitehead concedes this was a properly "issued" writ. "Issuing" a writ of
execution extends a judgment's life span for ten years from the issuance of the writ. See Tex.
Civ. Prac. & Rem. Code Ann. § 34.001(b) (Vernon 2008). Thus, on the record before us,
it appears that the judgment against Whitehead had been extended to December 6, 1995. See
id. 

 Cedyco also established a lien by recording its abstract of judgment in the deed
records. See Tex. Prop. Code Ann. §§ 52.001-52.004 (Vernon 2007 & Supp. 2008). Based
on the record before us, it also appears that the original judgment lien was active until the
mid-1990s. The judgment lien had been established by the recording and indexing of the
original abstract of judgment on May 15, 1984. See id.; see generally Tapss, L.L.C. v. Nunez
Co., 368 B.R. 575, 578-79 (W.D. Tex. 2005). Pursuant to section 52.006, the original
judgment lien continued until May 15, 1994, ten years following the original recording date. 
See Tex. Prop. Code Ann. § 52.006 (Vernon Supp. 2008).

 1997 Writ of Execution and Abstract of Judgment 


 To support the contention that the judgment and lien were still active when collection
efforts began in 2006, Cedyco directs us to actions it took in 1997. (3) Cedyco argues the 1997
writ of execution and abstract of judgment were timely filed when Whitehead's bankruptcy
case tolled the statutory periods for renewal. To support its argument, Cedyco cites Rogers
v. Corrosion Products, Inc., 42 F.3d 292 (5th Cir. 1995). Rogers, however, explicitly found
that section 108(c) of the Bankruptcy Code does not create a tolling provision. (4) Id. at 297. 
As the Fourteenth Court of Appeals explained, section 108(c) "anticipates and provides for
the expiration of periods for commencing or continuing civil actions during bankruptcy stays;
and an interpretation of that section as tolling such periods would render its 30 day extension
of time largely meaningless." Gantt v. Gantt, 208 S.W.3d 27, 30-31(Tex. App.-Houston
[14th Dist.] 2006, pet. denied). 

 As described above, the December 6, 1985, writ of execution extended the life of the
judgment against Whitehead to December 6, 1995. See Tex. Civ. Prac. & Rem. Code Ann.
§ 34.001(b). When another writ of execution was not issued on or before December 6, 1995,
the judgment against Whitehead became dormant. See id. 

 When a judgment becomes dormant, a judgment creditor has two years from the date
the judgment became dormant to institute an action to revive the judgment. See id. § 31.006
(Vernon 2008). In this case, Cedyco needed to institute a revival action on or before
December 6, 1997. However, the summary judgment evidence does not contain any mention
of Cedyco's filing a revival action. 

 We conclude that the evidence before the trial court was sufficient to allow it to
conclude the judgment became dormant as of December 7, 1995. In the summary judgment
proceeding, the evidence was sufficient to shift the burden to Cedyco to establish that a fact
issue on the judgment's dormancy precluded the trial court's granting of the summary
judgment. See Huckabee, 19 S.W.3d at 420. The record reflects that Cedyco presented no
evidence to meet its burden. 

 Regarding the judgment lien, its viability is also dependant on the judgment's being
active. See Tex. Prop. Code Ann. § 52.006 (Vernon Supp. 2008). If the judgment becomes
dormant the lien ceases to exist. See id. After the underlying judgment became dormant in
December 1995, the abstract of judgment could not be extended without first reviving the
judgment. Tapss, 368 B.R. at 578. Because the summary judgment evidence presented to the
trial court shows that the judgment became dormant, Whitehead sufficiently established that
the lien had also terminated for purposes of establishing his right to a summary judgment. See
Tex. Prop. Code Ann. § 52.006. To avoid summary judgment, Cedyco bore the burden of
establishing a fact issue, but it presented no evidence to do so. See Huckabee, 19 S.W.3d at
420.

 Because the trial court could have concluded that Cedyco's judgment was
unenforceable and that its lien had expired, the court did not err in granting summary
judgment. We overrule Cedyco's appellate issue and affirm the trial court's judgment. 

 AFFIRMED.


 _______________________________

 HOLLIS HORTON

 Justice 


Submitted on May 7, 2009

Opinion Delivered July 16, 2009

Before McKeithen, C.J., Kreger and Horton, JJ.

1. "Nulla Bona" is Latin for "no goods" and is defined as "[a] form of return by a
sheriff or constable upon an execution when the judgment debtor has no seizable property
within the jurisdiction." Black's Law Dictionary 1098 (8th ed. 2004).
2. No appellate issues are before us regarding the restraining order.
3. Cedyco does not explain how the 1994 writ of execution, obtained before the
bankruptcy dismissal, extended its judgment and lien.
4. Among other exceptions not applicable here, section 108(c) provides:


 [I]f applicable nonbankruptcy law . . . fixes a period for commencing or
continuing a civil action in a court other than a bankruptcy court on a claim
against the debtor, . . . and such period has not expired before the date of the
filing of the [bankruptcy] petition, then such period does not expire until the
later of--

 (1) the end of such period, including any suspension of such period occurring
on or after the commencement of the case; or

 (2) 30 days after notice of the termination or expiration of the stay under
section 362 . . . with respect to such claim. 


11 U.S.C.A. 108(c) (2009).