**U.S. FLEET SERVICES, INC.**

v.

**CITY OF FORT WORTH, TEXAS**

No. 4:00CV183–E.

United States District Court, N.D. Texas.

April 19, 2001.

Terrell W Oxford, Kenneth E Gardner, E Lawrence Vincent, Susman Godfrey, Dallas, TX, for plaintiff.

Laetitia Coleman Brown, Fort Worth City Attorney's Office, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION and ORDER

MAHON, District Judge.

Now before the Court is a "Motion for Summary Judgment" and an "Application for Temporary Restraining Order/[Preliminary Injunction]" ("Application for TRO/Preliminary Injunction") filed by Plaintiff U.S. Fleet Services, Inc. ("U.S.Fleet"). U.S. Fleet seeks a summary judgment and/or preliminary injunction, arguing that a city ordinance of Defendant City of Fort Worth ("Fort Worth") which restricts "mobile fleet fueling," is preempted by Texas state law. Fort Worth has filed opposition responses to both the Motion for Summary Judgment and Application for TRO/Preliminary Injunction, and U.S. Fleet has submitted reply briefing to the opposition responses.

Additionally, the Court has granted the Texas Petroleum Marketers and Convenience Store Association ("TPCA") permission to file an *amicus curiae* brief, in accordance with Local Rule 7.2(b). Because TPCA's brief largely supports and reiterates the City's positions, U.S. Fleet has also filed a response opposing the contentions set forth in the *amicus curiae* brief. After considering the numerous submissions related to both the Motion for Summary Judgment and the Application for TRO/Preliminary Injunction, along with the applicable law and record in this matter, the Court makes the following determinations.

## I. PRELIMINARY STATEMENT

As an initial matter, the Court is somewhat disturbed by the belligerent and hostile tone of the parties' submissions.[1] Af-

---

[1] U.S. Fleet has been particularly contentious throughout this case. At one point, U.S. Fleet accuses Fort Worth of practicing "local jingoism," by consciously ignoring or blatantly refusing to follow controlling state and federal law. *See* Pl.'s Reply Mem. in Support of its Appl. for TRO at 2. In support of this accusa-tion, U.S. Fleet cites the Court to a number of cases involving Fort Worth over the past two decades. *See id.* at 2, n. 3. These prior cases are wholly unrelated and irrelevant to the current action. Even the implied suggestion that these cases should be considered evidence of Fort Worth's so-called "local jin-

ter more than 29 years on the federal bench, the Court has found that name-calling and personal attacks, like those present in several of the parties' filings, do little to advance a party's position and only serve to cloud the real issues before the Court. The Court is astonished, however, in light of the hostility present in the filings, that the parties have agreed that the only issue for the Court to determine is whether Fort Worth is preempted from restricting or prohibiting the practice of mobile fueling and the operation of mobile service units inside Fort Worth under Chapter 753 of the Texas Health and Safety Code, Tex. Health & Safety Code Ann. §§ 753.001–753.011 (Vernon 1992) (hereinafter, the "Flammable Liquids Statute"), or the regulations adopted thereunder, 28 TAC §§ 34.1–34.6 (West 2000) (hereinafter, the "Flammable Liquids Administrative Rules"). *See* Pl.'s Mot. for Summ.J. at 1; Def.'s Resp. to Pl.'s Mot. for Summ.J. at 1.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Although this case has a tortured history, the relevant facts for the purposes of the Court's decision are essentially undisputed. U.S. Fleet is a Pennsylvania corporation operating specially designed mobile fueling tank trucks across the United States. *See* Pl.'s Compl. at 1. U.S. Fleet's trucks dispense diesel fuel into the vehicles of U.S. Fleet's commercial customers as an act of retail sale at the commercial customers' off-street parking facilities. *See id.* U.S. Fleet's trucks are commonly referred to as "mobile service units," and this method of distribution is variously referred to by the parties as "mobile fueling," "mobile fleet fueling," or "wet hosing." Mobile fueling allows fleets of commercial vehicles to be fueled on-

site at the commercial entity's factory, headquarters, or place of business, without the need of the vehicles traveling to fixed off-site facilities with underground fuel tanks in order to refuel. *See id.* at 3.

U.S. Fleet entered the Fort Worth mobile fleet fueling market in July 1998 after purchasing the existing mobile fueling business of two companies. *See* Pl.'s Compl. at 3. A few months later, on November 3, 1998, the Fort Worth City Council enacted City Ordinance No. 13636, adopting the 1997 version of the Uniform Fire Code ("1997 UFC"). *See* Ordinance No. 13636, adopted November 3, 1998 & codified at Fort Worth, Tex., Code of Ordinances ch. 13, art. I, § 13–1 (2001) (available *at http://www.fortworthgov.org* ) (hereinafter, "Ordinance No. 13636").

Article 79 of the 1997 UFC, as adopted by Ordinance No. 13636, does not completely prohibit mobile fueling, but it does severely limit mobile fueling to specific, highly regulated and approved circumstances. *See* 1997 UFC § 7904. These specific circumstances include:

(1) the fueling of aircraft (*see* 1997 UFC §§ 7904.5.4.2.4 & 2402);

(2) the fueling of vehicles at farms, construction sites, and similar areas (*see* 1997 UFC §§ 7904.5.4.2.5 & 7904.2.8);

(3) the fueling of marine craft and special equipment (*see* 1997 UFC § 7904.5.4.2.2);

(4) the fueling of motor vehicles during emergencies (*see* 1997 UFC § 7904.5.4.2.3); and

(5) the transferring of fuel from disabled tank vehicles into other tank vehicles (*see* 1997 UFC § 7904.5.4.2.6).

---

goism" in this case is completely erroneous

and unnecessarily inflammatory.

These specific circumstances do not include the type of commercial vehicle mobile fleet fueling practiced by U.S. Fleet.

According to Fort Worth, the Fort Worth Fire Department ("the Department") contacted 49 North Texas cities to inquire whether they allowed the type of mobile fueling practiced by U.S. Fleet. *See* Def.'s Resp. to Pl.'s Summ.J. at 1–2. Of the 46 cities that responded to the Department's inquiry, all stated that they did not allow mobile fleet fueling to be conducted within their city limits. *See id.* at Ex. A.[2]

At some point in late 1999, U.S. Fleet contends that a local television station aired an investigative news story regarding the purported dangers of mobile fueling. *See* Pl.'s Compl. at 5. According to U.S. Fleet, the news report aired comments from officials of the Department which characterized mobile fueling as a dangerous practice that is illegal in Fort Worth. *See id.*

After the news story aired, U.S. Fleet instructed two of its fire safety consultants to contact the Department so that U.S. Fleet could respond to any of the safety concerns the Department had regarding mobile fleet fueling. *See* Pl.'s Compl. at 6. The Department informed U.S. Fleet that it was seeking to develop a region-wide approach either banning or regulating mobile fueling through the Fire Advisory Board of Regional Codes Coordinating Committee of the North Central Texas Council of Governments ("COG Sub–Committee"). *See id.* at 6; Pl.'s Appl. for TRO at 5–6. U.S. Fleet then submitted to the Department an application for an "Alternative Means of Compliance," pursuant to the 1997 UFC as adopted by Ordinance No. 13636. *See* Pl.'s Compl. at 6. U.S. Fleet's Alternative Means of Compliance requested that it be allowed to continue the mobile fueling of commercial vehicles at off-street parking facilities. *See id.*

On February 25, 2000, U.S. Fleet received a copy of a letter dated February 22, 2000 from Chief Paul Rider, Assistant City Fire Marshall, to Reddy Ice, one of U.S. Fleet's customers. *See* Pl.'s Compl. at 8. Chief Rider's letter stated that mobile fleet fueling is a potentially hazardous activity that is prohibited in Fort Worth under Article 79 of the 1997 UFC, and punishable by a fine not to exceed $2,000 per offense. *See* Def.'s Resp. to Pl.'s Appl. for TRO at Ex. B. U.S. Fleet contends that Chief Rider's February 22, 2000 letter forced it to file this lawsuit on March 3, 2000. Pl.'s Appl. for TRO at 7.

This case was originally filed in the Dallas Division of the Northern District of Texas. Not surprisingly, considering that most of the facts underlying this case took place in Fort Worth, the case was transferred from the Dallas Division to the Fort Worth Division on March 7, 2000. *See* Honorable Jorge A. Solis's March 7, 2000 Order Transferring Case.

U.S. Fleet did not seek temporary or preliminary injunctive relief until several months after this lawsuit was filed, after it

---

**2.** U.S. Fleet informally objects to Exhibit "A" to Fort Worth's Response to U.S. Fleet's Motion for Summary Judgment as being inadmissable hearsay and irrelevant. *See* Pl.'s Reply Mem. in Support of its Appl. for TRO at p. 7, n. 3. Although U.S. Fleet's informal objection is noted, the Court concludes that the objection goes more to the weight and credibility the Court will assign to Exhibit "A", and not its admissibility. *See Nickel v.* *Rocky Mountain Clothing Co.,* 2000 WL 284192 *4 (N.D.Tex.2000) (Buchmeyer, C.J.). In addition, the Court has not considered Exhibit "A" in reaching its decision regarding the purely legal issue in this case. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79–80 (5th Cir.1987) (noting that factual disputes must be material in order to preclude summary judgment).

received a letter dated October 17, 2000 from Fort Worth Fire Marshall James Jones. *See* Def.'s Appl. for TRO at 8. Fire Marshall Jones's letter stated that mobile fueling is illegal in Fort Worth and ordered U.S. Fleet to cease its mobile fueling or face fines of up to $2,000 per offense. *See* Def.'s Resp. to Pl.'s Appl. for TRO at Ex. C. In reaction to Fire Marshall Jones' letter, U.S. Fleet filed its Application for TRO on October 27, 2000.

On October 31, 2000, the Court conducted an in-chambers TRO conference with the parties. At the TRO conference, Fort Worth stated that Fire Marshall Jones's October 17, 2000 Letter was meant to serve as a denial by the Department of U.S. Fleet's application for an Alternative Means of Compliance under Ordinance No. 13636. The parties agreed at the conclusion of the TRO conference to maintain the *status quo* until November 6, 2000, before which time Fort Worth was to determine whether it would agree to stay the enforcement of Ordinance No. 13636 pending trial. *See* Court's October 31, 2000 Mem. of Understanding. If Fort Worth could not agree to stay enforcement of Ordinance No. 13636, the Court was to conduct a joint TRO/Preliminary Injunction hearing on November 9, 2000. *Id.* However, on November 8, 2000, Fort Worth filed a Motion for Continuance of the hearing because U.S. Fleet was appealing the Department's denial of U.S. Fleet's application for an "Alternative Means of Compliance" to the Fort Worth Fire Prevention Board. *See* Def.'s Mot. for Continuance at 1. To allow for the appeal to the Fire Prevention Board, the Court continued the TRO/Preliminary Injunction hearing.

U.S. Fleet filed its Motion for Summary Judgment on November 16, 2000 and requested a combined hearing on both the Motion for Summary Judgment and Application for TRO/Preliminary Injunction, which this Court scheduled for January 4, 2001. *See* U.S. Fleet's November 16, 2000 Letter to the Court. However, the parties subsequently filed an "Agreed Motion for Ruling by Submission," which the Court granted on December 21, 2000. *See* Court's Dec. 21, 2000 Order. The Agreed Motion for Ruling by Submission stated that the parties agreed that an oral hearing was unnecessary because the pending motions could be determined by the Court without the submission of additional evidence or oral argument. *See* Agreed Mot. for Ruling by Submission at 1. The parties also agreed that Fort Worth would not enforce Ordinance No. 13636 until the Court ruled on the pending motions or Fort Worth gave reasonable notice to U.S. Fleet. *See id.* The parties' agreement has had the affect of maintaining the *status quo* and alleviated the need for the Court to issue a TRO.

As stated earlier, both parties have agreed that the issue presented in the Motion for Summary Judgment and Application for TRO/Preliminary Injunction is a question of law and a ruling by the Court can resolve this lawsuit without the necessity of a full-blown trial. *See* Agreed Mot. for Ruling by Submission at 1–2. Although the Court was hopeful that the parties would reach a compromise in this dispute which would avoid federal court intervention, such an agreement has not been forthcoming and the Court is now ready to make its ruling.

### III. ANALYSIS

#### A. Summary Judgment Standards

Summary Judgment is proper when the record establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207

(5th Cir.1990). In order to prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988); Fed.R.Civ.P. 56(c). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to its case. *Id.; Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir.1988). If the movant bears the burden of proof on a claim or defense, it must establish all elements of the claim or defense to prevail on summary judgment. *U.S. v. Home Health Agency, Inc.*, 862 F.Supp. 129, 133 (N.D.Tex.1994) (Mahon, J.); *Western Fire Insurance Co., v. Copeland*, 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd*, 824 F.2d 970 (5th Cir.1987).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. The Court's function in addressing whether summary judgment is appropriate is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

The present case is somewhat unusual because both the movant and the nonmovant have agreed that there is no genuine issue of material fact precluding summary judgment, and the only issue involved in this case is whether Texas law preempts Ordinance No. 13636. Inexplicably, however, Fort Worth has failed to file a cross-motion for summary judgment. Be that as it may, since both parties have fully briefed and agree upon the legal issue before the Court, the Court finds that it is in the interests of justice and judicial economy to consider Fort Worth's opposition response to U.S. Fleet's Motion for Summary Judgment as a "Cross-motion for Summary Judgment" by Fort Worth on the same issue.[3]

---

**3.** The Fifth Circuit has endorsed this procedural mechanism on several occasions. For instance, in *Matter of Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388 (5th Cir.1989), the Fifth Circuit stated: "We have noted that 'when one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment.'" *Id.* at 393 (*quoting Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir.1985)); *accord Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir.1997); *British Caledonian Airways, Ltd. v. First State Bank of Bedford, Texas*, 819 F.2d 593, 595–96 (5th Cir.1987); *Evans v. Midland Enterprises, Inc.*, 754 F.Supp. 91, 95 (M.D.La.1990).

As further explained by the late Professor Charles Alan Wright:
> The grant of judgment for the nonmoving party clearly is proper if both sides agree that there are no material fact issues and join in the request that the case be decided, for the moving or the nonmoving side, on the basis of a motion for judgment made by only one of them.

Charles Alan Wright, *et al.*, 10A Fed.Prac. & Proc.Civ.3d, § 2720 (1998).

Based on the legal arguments presented, the Court will determine whether summary judgment should be granted in favor of either U.S. Fleet or Fort Worth. Thus, consideration of U.S. Fleet's Application for TRO/Preliminary Injunction is now unnecessary, and the Court will therefore deny U.S. Fleet's Application for TRO/Preliminary Injunction as moot. *See, e.g., Term Limits Leadership Council, Inc. v. Clark,* 984 F.Supp. 470, 475 (S.D.Miss. 1997) (preliminary injunction not considered where Court granted summary judgment).

## B. Jurisprudential Boundaries

▆▆▆▆ The Court begins its analysis by outlining the jurisprudential boundaries in

which it operates in this diversity case. *See, e.g., Allstate Ins. Co. v. Shelby,* 672 F.Supp. 956, 958 (N.D.Tex.1987).[4] In a diversity case such as this one, as an *Erie* Court, this Court must decide the questions presented according to the substantive law of Texas, *see Burns v. Gleason,* 819 F.2d 555, 556 (5th Cir.1987); *accord Allstate Ins. Co.,* 672 F.Supp. at 958. This declaratory judgment action does not involve a federal issue and is based solely on the Court's interpretation of a Texas statute and related administrative law—the Flammable Liquids Statute and Flammable Liquids Administrative Rules. Unfortunately, this Court's attempt at statutory interpretation lacks the assistance of any relevant Texas court interpretation with

---

4. Because this diversity case involves an uninterpreted Texas statute and administrative rules and their effect on a city ordinance, the Court has considered, *sua sponte,* whether it should abstain in this case in favor of the Texas state courts. *See generally Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 389–90 (5th Cir.2001); 17A Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Fed.Prac. & Proc.2d § 4241 (1988) (providing an overview of the various abstention doctrines). However, abstention due to an unclear state law "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and is permitted only under "exceptional circumstances." *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *see also Southwest Airlines v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 92 (5th Cir.1977) (merely because a federal court must interpret state law does not by itself threaten federalism). "Once jurisdiction is established in a diversity case, the general rule is that the District Court must proceed to ·decide the case in accordance with its customary procedures for the management of cases." *Boston Old Colony Ins. Co. v. Balbin,* 591 F.2d 1040, 1043 (5th Cir.1979), *citing Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *see also Wilson v. Valley Elec. Membership Corp.,* 8 F.3d 311, 313 (5th Cir.1993) (federal courts have a virtually unflagging ob-

ligation ... to exercise the jurisdiction given them); *compare Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 25–31, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (sanctioning abstention in a diversity case only where state law is unclear and the federal court's decision intimately involves the state's sovereign prerogative).

After a review of the abstention doctrines and relevant ,caselaw, the Court finds that abstention would be inappropriate. The Court is not aware of a concurrent state court proceeding involving the issue in this case. *Compare Travelers Insurance Co. v. Louisiana Farm Bureau Fed'n Inc.,* 996 F.2d 774 (5th Cir.1993). Further, the Flammable Liquids Statute and Administrative Rules, although not interpreted as they relate to mobile fueling, are not unsettled in the traditional sense and can be easily construed by examining the plain, unambiguous language of the Texas laws. *See, e.g., Louisiana Debating and Literary Ass'n v. City of New Orleans,* 42 F.3d 1483, 1491 & n. 10 (5th Cir.1995) (affirming district court's decision declining to abstain, noting that one of· the bases on which court declined abstention was the fact that neither party had demonstrated that a chapter of city code was ambiguous); *Duncan v. Poythress,* 657 F.2d 691 698 (5th Cir.1981) ("The mere absence of judicial interpretation does not necessarily render state law unsettled or uncertain.").

regard to Flammable Liquids Statute and the Flammable Liquids Administrative Rules.[5]

 Where the issues involved are ones upon which the state supreme court has not yet ruled, this Court is obligated to rule as it believes that court would rule on the legal issues determining the outcome of the case. *See Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.) (en banc), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Thus, if the Texas Supreme Court has not decided the issue, as is true in the instant action, the Court must make an *"Erie* guess" on how that court would rule. *See Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir.), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).[6] This Court is not permitted to do merely what it thinks best, but it must do what it thinks the Texas Supreme Court would deem best. *Jackson*, 781 F.2d at 397; *see also Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir.1995), *cert. denied*, 517 U.S. 1221, 116 S.Ct. 1851, 134

L.Ed.2d 951 (1996) (*"Erie* and its progeny require no more of a federal court than conscientiously to satisfy its duty to predict how the state court will decide a question.").[7]

 While this Court cannot be sure of the result the Texas courts would reach when interpreting a Texas statute or administrative rules that have not been construed by the Texas courts, the Court is to apply the same principles of statutory construction and interpretation that would be used by the Texas courts. *See Thomas v. Reliance Ins. Co.*, 617 F.2d 122, 125 (5th Cir.1980); *see also* 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Fed.Prac. & Proc., § 4507 (1995).

## C. Texas Rules of Statutory Construction

 Texas law provides that a court's goal in interpreting a statute is to give effect to legislative intent. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *see also City of LaPorte v. Barfield*, 898 S.W.2d 288, 292

---

**5.** A Texas court of appeals has interpreted the predecessor statute to the Flammable Liquids Statute as it relates to a city's prohibition of the operation of self-service gas stations in *City of Baytown v. Angel*, 469 S.W.2d 923 (Tex.Civ.App.—Houston [14th Dist] 1971, writ. ref'd n.r.e.). Unfortunately, this decision provides little guidance in interpreting Flammable Liquids Statute and Flammable Liquids Administrative Rules as they relate to a city's restriction of mobile fueling.

**6.** Unlike the Fifth Circuit—which can certify a question of state law to the Texas Supreme Court, which is "the final arbiter of [the] issue, rather than engage in an *Erie* type guess" *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir.1986)—the certification option is not available to a U.S. District Court. *see Allstate Ins. Co.*, 672 F.Supp. at 958, n. 3; *see also* TEX. CONST. art. 5, § 3–c (Texas Supreme Court has the jurisdiction to answer questions of state law certified from federal appellate courts).

**7.** As the Fifth Circuit explained when confronted with the need to predict the law of Mississippi:

> We base our forecast on (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. [A]bsent evidence to the contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so.

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir.1998) (citations omitted).

(Tex.1995). However, the cardinal rule in Texas is that a court construes a statute "by looking to the plain and common meaning of the statute's words." *Liberty Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482, 484 (Tex.1998). "If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865 (Tex.1999). Moreover, if a statute is unambiguous on its face, rules of construction or other extrinsic aids cannot be used to create ambiguity. *See id.* 996 S.W.2d at 865–66; *Fields v. Teamsters Local Union*, 23 S.W.3d 517, 527 (Tex.App.—Houston [1st Dist] 2000, pet. denied).

 ▉▉▉ Likewise under Texas law, administrative rules, which have the same force as statutes, are construed in the same manner as statutes. *Rodriguez v. Service Lloyds Insurance Company*, 997 S.W.2d 248, 254 (Tex.1999); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex.1976). The Court's primary objective in construing an administrative rule is to give effect to the administrative agency's intent. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997). Unless the administrative rule or regulation is ambiguous, the Court must follow the rule's clear language. *Rodriguez*, 997 S.W.2d at 254; *Republicbank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). In addition, while courts defer to an administrative agency's interpretation of its own rules, courts "cannot defer to an administrative agency's interpretation that 'is plainly erroneous or inconsistent with the regulation.'" *Rodriguez*, 997 S.W.2d at 255–56 (*quoting Public Util. Com'n of Tex. v. Gulf States Util. Co.*, 809 S.W.2d 201, 206 (Tex.1991)).

 ▉▉▉ Texas law is clear that the words in the statute or administrative rule are the surest guide to determining legislative intent. *See Fitzgerald*, 996 S.W.2d at 866. As the Texas Supreme Court pointed out over 100 years ago:

> When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law.

*Dodson v. Bunton*, 81 Tex. 655, 17 S.W. 507, 508 (1891). When the courts "stray from the plain language of a statute, we risk encroaching on the legislature's function to decide what the law should be." *Fitzgerald*, 996 S.W.2d at 866.

### D. The Preemption of City Ordinances

 ▉▉▉ When the Texas legislature intends to preempt a municipality on a subject generally within the municipality's power to regulate, the legislature must do so with unmistakable clarity. *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex.1993) (*citing City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964)). "An ordinance of a home rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *City of Dallas*, 852 S.W.2d at 491. However, if a city ordinance and state statute merely regulate the same area, they "will not be held repugnant to each other if any reasonable construction leaving both in effect can be reached." *Id.; see also City of Weslaco v. Melton*, 158 Tex. 61, 308 S.W.2d 18, 19–20 (1957)("The validity of an ordinance is presumed and before the courts can interfere with its operations, the ordinance must clearly appear to be arbitrary, unreasonable, and an abuse of police power.").

■ The question of whether Fort Worth is preempted in enacting an ordinance restricting the operation of "mobile service units" can be answered by looking at the plain, unambiguous language of the Flammable Liquids Statute (*see* Tex. Health & Safety Code §§ 753.001–753.011) and the Flammable Liquids Administrative Rules. *See* 28 TAC §§ 34.1–34.6.[8] There is no dispute that the Flammable Liquids Statute and the Flammable Liquids Administrative Rules are the controlling laws in this case involving mobile fueling.

### E. The Flammable Liquids Statute

Examining the plain language of the Flammable Liquids Statute, it is clear that the Texas Legislature intended the statute to regulate the safe handling and use of flammable liquids by **"mobile service units"** and **"retail service stations."** *See* Tex. Health & Safety Code §§ 753.001–753.011. Section 753.001(4) defines a mobile service unit as a "vehicle, tank truck, or other mobile device from which flammable liquid used as motor fuel may be dispensed as an act of retail sale into the fuel tank of a motor vehicle parked on an off-street parking facility." *Id.* at § 753.001(4). There is no dispute that the term "mobile service units" as defined in § 753.001(4) describes the tank truck vehicles used by U.S. Fleet in its mobile fueling business. In comparison, Section 753.001(6) defines a "retail service station" as "that portion of a property where a flammable liquid used as motor fuel is stored and dispensed as an act of retail sale from fixed equipment into the fuel tank of a motor vehicle. The term does not include a marina." *Id.* at 753.001(6).

Consistent with the Texas Legislature's intention of regulating the use of flammable liquids by both mobile service units and retail service stations, separate sections of the Flammable Liquids Statute concern the adoption of administrative rules regarding each. For example, § 753.002 deals with the adoption of rules for mobile service units. *See* Tex. Health & Safety Code § 753.002. It provides:

(a) The [State Board of Insurance] shall adopt rules for the safe movement and operation of mobile service units and the safe dispensing of flammable liquids by **mobile service units.**

(b) A municipality may require a license for the operation of each **mobile service unit** in the municipality and may charge a reasonable license fee.

*Id.* (emphasis added). In contrast, § 753.003 concerns the adoption of rules relating to retail service stations and provides:

(a) The board shall administer this chapter through the state fire marshal and shall adopt rules for the safe storage, handling, and use of flammable liquids at **retail service stations.**

(b) The rules must substantially conform to the most recently published standards of the National Fire Protection Association, including standards in effect on or after August 1, 1989, for the storage, handling, and use of flammable liquids at **retail service stations**....

Tex. Health & Safety Code § 753.003 (emphasis added).

Section 753.006 of the Flammable Liquids Statute regulates both retail service stations and mobile service units and concerns the affect on local ordinances of any

---

8. The Court notes that neither U.S. Fleet nor Fort Worth assert that the statutes and administrative rules at issue are ambiguous or otherwise unclear. Indeed, both parties rely on the language of the statutes and administrative rules in arguing their respective positions.

administrative rule adopted pursuant the Flammable Liquids Statute, it provides in part that:

> (a) A county or municipality may not enact or enforce an ordinance or rule that is inconsistent with this chapter or the board's rules unless allowed by this chapter.
>
> (b) If a municipality by ordinance adopted rules relating to mobile service units not later than 180 days after the board adopted rules relating to mobile service units and the rules adopted by the municipality are more restrictive than the board's rules, the rules are not invalid under Subsection (a)....

Tex. Health & Safety Code § 753.006.

### F. The Flammable Liquids Administrative Rules

The parties are in agreement that the State Fire Marshal has adopted rules pursuant to the Flammable Liquids Statute, and that these provisions are found in the Flammable Liquids Administrative Rules. *See* 28 TAC §§ 34.1–34.6. Like the Flammable Liquids Statute, the regulations found in the Flammable Liquids Administrative Rules are clear and unambiguous. However, unlike the Flammable Liquids Statute, which explicitly impacts both mobile service units and retail service stations, the term **"mobile service unit"**—or any other term that could be construed to mean mobile fueling, mobile fleet fueling, or wet hosing—is conspicuously absent from the Flammable Liquids Administrative Rules. *See id.* For instance, § 34.1 unambiguously indicates that the Flammable Liquids Administrative Rules exclusively regulate the use of flammable liquids at retail service stations. *See* 28 TAC § 34.1. Section 34.1 provides that:

> The purpose of this Subchapter is to administer the law set forth in the Health and Safety Code Chapter 753, regarding the safe storage, handling, and use of flammable liquids at **retail service stations.**

28 TAC § 34.1 (emphasis added).

The Flammable Liquids Subchapter is replete with references to the use of flammable liquids solely at "retail service stations." Consider the following verbatim sections of the Flammable Liquids Administrative Rules:

- The sections of this subchapter shall be known as and may be cited as the rules for the safe storage, handling, and use of flammable liquids at **retail service stations.** 28 TAC § 34.2 (emphasis added).

- The sections of this subchapter shall apply to any person engaged in the business of the storage, handling, dispensing, and use of flammable liquids at **retail service stations,** and bulk plants operated in conjunction with **retail service stations.** 28 TAC § 34.3 (emphasis added).

- This subchapter applies to underground and aboveground storage tanks in service after the effective date of the subchapter except for underground tanks used by **retail service stations** in service prior to September 1, 1969, to the extent that such **stations** in service prior to September 1, 1969, do not create a distinct hazard to life and property. 28 TAC § 34.6 (emphasis added).

The plain language of these sections unequivocally indicates that the purpose of the Flammable Liquids Administrative Rules is solely "to administer the law set forth in the Health and Safety Code Chapter 753, regarding the ... use of flammable liquids at **retail service stations,**" and not mobile service units. 28 TAC § 34.1 (emphasis added).

Section 34.5 of the Flammable Liquids Administrative Rules adopts the standards set forth in National Fire Protection Association Pamphlet 30(A) ("NFPA 30(A)–1990"), "except to the extent they are in conflict" with the other sections of the Flammable Liquids Administrative Rules. 28 TAC § 34.5. U.S. Fleet argues that because NFPA 30(A)–1990 contains standards which also relate to mobile fueling and mobile service units in addition to those related to retail service stations, § 34.5 adopts rules related to mobile fueling which preempt Ordinance No. 13636. As pointed out above, this argument runs afoul of the plain language of the Flammable Liquids Administrative Rules, which only regulate use of "flammable liquids at **retail service stations.**" 28 TAC § 34.1. Since the Flammable Liquids Administrative Rules only adopt regulations regarding flammable liquids at retail service stations, the standards found in NFPA 30(A)–1990 concerning mobile fueling would necessarily be in conflict with the rules, and consequently, are not adopted by § 34.5. *See* 28 TAC § 34.5.

In further support of its argument that the Flammable Liquids Administrative Rules regulate both retail service stations and mobile service units, U.S. Fleet has submitted an affidavit and letter from Mr. Wayne S. Smith, Director of Fire Safety Inspections for the State Fire Marshal's Office. *See* P.l.'s Reply Mem. in Support of its Appl. for TRO at Ex. A. Mr. Smith's letter and affidavit state that, "mobile fleet fueling is regulated under Article 753 of the Government Code and the rules adopted under the statute." *Id.*[9] Apparently, Mr. Smith interprets the Flammable Liquids Administrative Rules to regulate "mobile service units" in addition to "retail service stations." Of course, not only is the State Fire Marshal's office not a party to this lawsuit, but for the Court to accept Mr. Smith's interpretation would go against the plain, unambiguous language of the Flammable Liquids Administrative Rules as discussed herein. *See United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (recognizing that Courts must accept an administrative agency's interpretation of its own rules unless that interpretation is inconsistent with the plain language of the rule); *Rodriguez,* 997 S.W.2d at 254–55 ("While we defer to the Commission's interpretation of its own regulation, we cannot defer to an administrative interpretation that is plainly erroneous or inconsistent with the regulation."); *see also* 2 K. Davis, Administrative Law Treatise § 7:22 (2d ed.1979).[10]

To find that the Flammable Liquids Administrative Rules regulate

**9.** The Court's research has revealed that Article 753 of the Texas Government Code does not exist. The Court therefore assumes that Mr. Smith incorrectly stated that "Article 753 of the Government Code" regulates mobile fleet fueling, rather than Chapter 753 of the Texas Health & Safety Code, the Flammable Liquids Statute, as discussed herein.

**10.** Although not pointed out by the parties, the Court's own research indicates that at one time the Texas Commission on Fire Protection enacted administrative rules explicitly governing mobile service units, but these rules have since been repealed. *See* 22 Tex. Reg. 4354 (May 20, 1997) ("The Texas Commission of Fire Protection proposes the repeal of [37 TAC] §§ 505.1–505.12, concerning **mobile service units.**") (emphasis added); *and see* 22 Tex.Reg. 8408 (August 22, 1997) ("the Texas Commission on Fire Protection adopts the repeal of [37 TAC] §§ 505.1–505.12, concerning **mobile service units,** without changes to the proposed text as published in the May 20, 1997, issue of the Texas Register.") (emphasis added). The parties have not specified, and the Court's own exhaustive search has not uncovered, any current administrative regulations dealing specifically with "mobile service units."

both retail service stations and mobile service units, the Court would be impermissibly forced to insert additional words into the plain language of the rules. For instance, § 34.1 would necessarily have to be rewritten to state that "the purpose of the subchapter is to administer the law set forth in the Health and Safety Code, Chapter 753, regarding the safe storage, handling, and use of flammable liquids at retail service stations [and the safe movement and operation of mobile service units and the safe dispensing of flammable liquids by mobile service units]." *Compare* 28 TAC § 34.1. Texas law dictates that this Court is not permitted to insert additional words into a statute or administrative rule unless it is absolutely necessary to give effect to the legislative intent. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex.1981). On the contrary, courts must "presume that every word excluded from a statute [or administrative rule] must [be] excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981); *Neurobehavorial Assoc., P.A. v. Cypress Creek Hosp. Inc.*, 995 S.W.2d 326, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.). This Court cannot resort to such legal "jingoism" to rewrite the plain language of the Flammable Liquids Administrative Rules in favor of U.S. Fleet.

## IV. CONCLUSION

■ The Court finds, after an exhaustive review of the plain and unambiguous language of the Flammable Liquids Statute and the Flammable Liquids Administrative Rules, that Texas law does not preempt Fort Worth Ordinance No. 13636.[11] In addition, Ordinance No. 13636 is not inconsistent with either the Flammable Liquids Statute or the Flammable Liquids Administrative Rules. The Court further finds that, because of the absence of any Texas administrative rules regulating mobile fueling, Fort Worth's enforcement of Ordinance No. 13636 is consistent with Fort Worth's powers under the Flammable Liquids Statute. *See* Tex. Health & Safety Code § 753.001.[12]

Therefore, for the reasons set forth in this Memorandum Opinion and Order, the Court hereby ORDERS that summary judgment be GRANTED in favor of Defendant City of Fort Worth, Texas.

It is further ORDERED that Plaintiff U.S. Fleet Services, Inc.'s Motion for Summary Judgment is DENIED.

---

**11.** As stated by the Texas Supreme Court in *City of Richardson v. Responsible Dog Owners of Texas:*

> [t]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject is completely preempted. When there is no conflict between a state law and a city ordinance, the ordinance is not void.

794 S.W.2d 17, 19 (Tex.1990).

**12.** Even if this Court were to hold that the Flammable Liquids Administrative Rules regulate both retail service stations and mobile service units, it would be difficult for U.S. Fleet to contend that Fort Worth is preempted from enforcing Ordinance No. 13636. Ordinance No. 13636 does not completely prohibit mobile fleet fueling, and Fort Worth is explicitly allowed to adopt a licensing ordinance setting standards and requirements for the operation of mobile service units under the Flammable Liquids Statute. *See* Tex. Health & Safety Code § 753.001(b).

As recognized thirty years ago by the Texas Attorney General, interpreting the predecessor law to the Flammable Liquids Statute, "[a]ny city which enacts a licensing ordinance [for mobile service units] would, of necessity, have to set the requirements for such a license in light of the **minimum** standards established in the Board's rules and regulations." Tex. Att'y Gen. No. M–947 (1971) (emphasis added); *and see Florida ex rel Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir.1976) (recognizing that state attorney general opinions represent persuasive authority for federal courts in interpreting unsettled state law).

It is further ORDERED that Plaintiff U.S. Fleet Services Inc.'s Application for TRO/Preliminary Injunction is DENIED as moot.

A final judgment in conformity with this Memorandum Opinion and Order shall be issued contemporaneously herewith. Each party is to bear its own costs and expenses incurred in this matter

It is so ORDERED.